**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| **Z-MAN FISHING PRODUCTS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JEFFREY C. QUEEN AND QUEEN TACKLE LLC,**<br><br>**Defendants.** | Civil Action No. 5:19-cv-00147-KDB-DCK<br><br>**ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIMS**<br><br>**Jury Trial Demanded** |

Defendants Jeffrey C. Queen and Queen Tackle LLC (collectively, "Defendants"), by and through undersigned counsel, hereby answer Plaintiff Z-Man Fishing Products, Inc.'s ("Z-Man Fishing") First Amended Complaint [Dkt. 13] (the "Amended Complaint") filed on February 7, 2020.

## ANSWER

Defendants respond to the allegations contained in the numbered paragraphs of Z-Man Fishing's Amended Complaint below. Defendants deny all allegations and characterizations in Z-Man Fishing's Amended Complaint unless expressly admitted in the following paragraphs.

## GENERAL ALLEGATIONS

1. Defendants admit that, on information and belief, and based on representations by Z-Man Fishing in its Amended Complaint, Z-Man Fishing is a South Carolina corporation doing business in Charleston County, South Carolina.

2. Admitted.

3. Admitted.

4. Defendants admit that this Court has subject matter jurisdiction over actions for alleged patent and trademark infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a). Defendants are without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 4, and therefore deny them.

5. Z-Man Fishing's venue allegation calls for a legal conclusion and therefore no answer is required.

6. Defendants do not contest whether personal jurisdiction properly lies over Defendants by this Court, solely for the purposes of this action. To the extent that a response is required, Defendants deny the allegations and characterizations contained in Paragraph 6.

7. Defendants admit that the first page of U.S. Patent No. 7,627,978 displays "Snag-Resistant Fishing Lure" as its title. Defendants admit that Exhibit A to the Amended Complaint purports to be a copy of the '978 Patent. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegation or characterization of Paragraph 7, and therefore deny them.

8. Defendants admit that the first page of U.S. Patent No. 7,726,062 displays "Snag-Resistant Fishing Lure" as its title. Defendants admit that Exhibit B to the Amended Complaint purports to be a copy of the '062 Patent. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegation or characterization of Paragraph 8, and therefore deny them.

9. Defendants admit that the first page of U.S. Patent No. 9,253,967 displays "Snag-Resistant Fishing Lure and Methods of Making and Using" as its title. Defendants admit that Exhibit C to the Amended Complaint purports to be a copy of the '967 Patent. Defendants are

without knowledge or information sufficient to form a belief as to the truth of any remaining allegation or characterization of Paragraph 9, and therefore deny them.

10. To the extent Paragraph 10 implicates legal conclusions, no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations or characterizations of Paragraph 10, and therefore deny them.

11. To the extent Paragraph 11 implicates legal conclusions, no response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations or characterizations of Paragraph 11, and therefore deny them.

12. Defendants deny that the hexagonal blade of Plaintiff's alleged fishing lure design is a "non-functional element," and further deny that the hexagonal blade element is either unique or distinctive. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations or characterizations of Paragraph 12, and therefore deny them.

13. Defendants admit that the USPTO's online TESS database reflects that Plaintiff is the owner of U.S. Trademark Registration No. 3505384, which claims the design depicted and described in Paragraph 13 for use on and in connection with "Fishing lures" in International Class 28. Defendants deny that Registration No. 3505384 is a registration "for the aforedescribed trade dress." Defendants admit that Exhibit D to the Amended Complaint purports to be a copy of a USPTO record of Registration No. 3505384. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations or characterizations of Paragraph 13, and therefore deny them.

14. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations or characterizations of Paragraph 14, and therefore deny them.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations or characterizations of Paragraph 15, and therefore deny them.

16. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations or characterizations of Paragraph 16, and therefore deny them.

17. Defendant Jeffrey C. Queen admits that he has sold the Switch Blade product in this District. Defendant Jeffrey C. Queen admits that the photographs shown in Paragraph 17 purport to show the Switch Blade product. Except as specifically admitted and to the extent that a response is required, Defendants deny the remaining allegations and characterizations in Paragraph 17.

18. Defendants deny the allegations or characterizations of Paragraph 18.

19. To the extent Paragraph 19 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is a component of the CHATTERBAIT® fishing lure. Defendants deny that the Switch Blade product constitutes a material part of the alleged invention patented in the ’978 Patent, the ’062 Patent, and the ’967 Patent.

20. Defendants deny that either Defendant Jeffrey C. Queen or Defendant Queen Tackle has directly infringed Plaintiff’s ’978 Patent, ’062 Patent, and ’967 Patent by making and using within the United States a fishing lure using the Switch Blade product that is within the scope of any claim of any of the ’978 Patent, the ’062 Patent, or the ’967 Patent. Defendants admit that the image in Paragraph 20 purports to show a screen grab of Defendant Jeffrey C. Queen’s Facebook® page.

21. Defendants deny that either Defendants or the Switch Blade product infringe the ’978 Patent, the ’062 Patent, or the ’967 Patent. Defendants admit that the image in Paragraph 20 purports to show a screen grab of Defendant Jeffrey C. Queen’s Facebook® page. To the extent Paragraph 21 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is especially made or especially adapted for use in infringing the ’978 Patent, ’062 Patent, and ’967 Patent.

22. Defendants admit that the image in Paragraph 20 purports to show a screen grab of Defendant Jeffrey C. Queen’s Facebook® page. Defendants deny that either Defendants or the Switch Blade product infringe the ’978 Patent, the ’062 Patent, or the ’967 Patent. To the extent Paragraph 22 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is especially made or especially adapted for use in an infringement of the ’978 Patent, ’062 Patent, and ’967 Patent. Defendant Jeffrey C. Queen denies that the ’978 Patent,’062 Patent, and ’967 Patent proscribe any such use of the Switch Blade product and denies knowledge that the ’978 Patent,’062 Patent, and ’967 Patent proscribe any such use of the Switch Blade product.

23. To the extent Paragraph 23 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is not a staple article or commodity of commerce suitable for substantial noninfringing use relative to the ’978 Patent, the ’062 Patent, or the ’967 Patent. Defendants deny that the Switch Blade product contributorily infringes the ’978 Patent, the ’062 Patent, and the ’967 Patent. Defendants deny all remaining allegations and characterizations of Paragraph 23.

24. Defendants admit that Defendant Jeffrey C. Queen had knowledge that Z-Man claimed to have patent protection for its product. Defendants deny the remaining allegations and characterizations of Paragraph 24.

25. To the extent Paragraph 25 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that Defendant Jeffrey C. Queen has intentionally induced others to infringe the ’978 Patent, ’062 Patent, and ’967 Patent. Defendants deny that Defendant Jeffrey C. Queen has offered for sale and sold the Switch Blade product with advertising and instructions about using the Switch Blade product to directly infringe the ’978 Patent, ’062 Patent, and ’967 Patent. Defendants deny that the Switch Blade product is used to directly infringe the ’978 Patent, ’062 Patent, and ’967 Patent. Defendants deny the remaining allegations and characterizations of Paragraph 25.

26. Paragraphs 17-25 of Defendants’ Answer to the Amended Complaint are incorporated by reference as if set forth in full herein. Defendants deny that the Switch Blade product can be used to directly infringe the ’978 Patent, ’062 Patent, and ’967 Patent. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations or characterizations of Paragraph 26, and therefore deny them.

27. Defendants admit that Z-Man Fishing sent a letter dated August 14, 2019 to Defendant Jeffrey C. Queen. Defendants admit that the letter identified the ’978 Patent, ’062 Patent, ’967 Patent, and Registration No. 3505384. Except as specifically admitted and to the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 27.

28. Defendants admit that Defendant Jeffrey C. Queen, through an attorney, sent a letter responsive to Z-Man Fishing’s August 14, 2019 letter, and continued to sell the Switch Blade

product thereafter because it does not infringe any valid rights of Z-Man Fishing. Except as specifically admitted and to the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 28.

29. Defendants admit that Defendant Queen Tackle LLC was formed on or around August 23, 2019. Except as specifically admitted and to the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 29.

30. Defendants admit that Defendant Queen Tackle LLC has sold the Switch Blade product. Except as specifically admitted and to the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 30.

31. Defendants admit that Defendant Queen Tackle LLC has sold the Switch Blade product. Except as specifically admitted and to the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 31.

32. Defendants deny the allegations or characterizations of Paragraph 32.

33. To the extent Paragraph 33 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is a component of the CHATTERBAIT® fishing lure. Defendants deny that the Switch Blade product constitutes a material part of the alleged invention patented in the ’978 Patent, the ’062 Patent, and the ’967 Patent. Defendants deny the remaining allegations and characterizations of Paragraph 33.

34. Defendants deny that either Defendants or the Switch Blade product infringe the ’978 Patent, the ’062 Patent, or the ’967 Patent. To the extent Paragraph 34 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is especially made or especially adapted for use in infringing the ’978

Patent, ’062 Patent, and ’967 Patent. Defendants deny the remaining allegations and characterizations of Paragraph 34.

35. To the extent Paragraph 35 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is not a staple article or commodity of commerce suitable for substantial noninfringing use relative to the ’978 Patent, the ’062 Patent, or the ’967 Patent. Defendants deny all remaining allegations and characterizations of Paragraph 35.

36. Defendants admit that Defendant Queen Tackle LLC had knowledge that Z-Man claimed to have patent protection for its product. Defendants deny all remaining allegations or characterizations of Paragraph 36.

37. Defendants deny that either Defendants or the Switch Blade product infringe the ’978 Patent, the ’062 Patent, or the ’967 Patent. To the extent Paragraph 37 implicates legal conclusions, no response is required. To the extent a response is required, Defendants deny that the Switch Blade product is especially made or especially adapted for use in infringing the ’978 Patent, ’062 Patent, and ’967 Patent. Defendant Queen Tackle denies that the ’978 Patent,’062 Patent, and ’967 Patent proscribe any such use of the Switch Blade product and denies knowledge that the ’978 Patent,’062 Patent, and ’967 Patent proscribe any such use of the Switch Blade product. Defendants deny the remaining allegations and characterizations of Paragraph 37.

38. Defendants deny the allegations or characterizations of Paragraph 38.

39. Defendants deny the allegations or characterizations of Paragraph 39.

**<u>FIRST CAUSE OF ACTION</u>**
**Alleged Patent Infringement**
**U.S. Patent No. 7,627,978**

40. Defendants repeat and restate each of its preceding responses to the allegations of the Amended Complaint as if fully set forth herein.

41. Paragraph 41 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that either Defendant Jeffrey C. Queen or Defendant Queen Tackle has directly infringed the '978 Patent by making and using within the United States a fishing lure with the Switch Blade product that is within the scope of at least one claim of the '978 Patent. Defendants deny any remaining allegations or characterizations contained in Paragraph 41.

42. Paragraph 42 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants have been or still are contributorily infringing the '978 Patent. Defendants deny that Defendants have been or still are inducing others to directly infringe the '978 Patent. Defendants deny any remaining allegations or characterizations contained in Paragraph 42.

43. Paragraph 43 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants will continue to infringe the '978 Patent unless enjoined by this Court.

44. Paragraph 44 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants infringe the '978 Patent. Defendants deny that any alleged infringement is intentional, willful, and deliberate, and with conscious disregard for Z-Man Fishing's rights.

45. Paragraph 45 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 45.

46. Paragraph 46 states a legal conclusion to which no response is required.

## SECOND CAUSE OF ACTION
**Alleged Patent Infringement**
**U.S. Patent No. 7,726,062**

47. Defendants repeat and restate each of its preceding responses to the allegations of the Amended Complaint as if fully set forth herein.

48. Paragraph 48 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that either Defendant Jeffrey C. Queen or Defendant Queen Tackle has directly infringed the ’062 Patent by making and using within the United States a fishing lure with the Switch Blade product that is within the scope of at least one claim of the ’062 Patent. Defendants deny any remaining allegations or characterizations contained in Paragraph 48.

49. Paragraph 49 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants have been or still are contributorily infringing the ’062 Patent. Defendants deny that Defendants have been or still are inducing others to directly infringe the ’062 Patent. Defendants deny any remaining allegations or characterizations contained in Paragraph 49.

50. Paragraph 50 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants will continue to infringe the ’062 Patent unless enjoined by this Court.

51. Paragraph 51 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants infringe the ’062 Patent. Defendants deny that any alleged infringement is intentional, willful, and deliberate, and with conscious disregard for Z-Man Fishing’s rights.

52. Paragraph 52 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 52.

53. Paragraph 53 states a legal conclusion to which no response is required.

**<u>THIRD CAUSE OF ACTION</u>**
**Alleged Patent Infringement**
**U.S. Patent No. 9,253,967**

54. Defendants repeat and restate each of its preceding responses to the allegations of the Amended Complaint as if fully set forth herein.

55. Paragraph 55 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that either Defendant Jeffrey C. Queen or Defendant Queen Tackle has directly infringed the ’967 Patent by making and using within the United States a fishing lure with the Switch Blade product that is within the scope of at least one claim of the ’967 Patent. Defendants deny any remaining allegations or characterizations contained in Paragraph 55.

56. Paragraph 56 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants have been or still are contributorily infringing the ’967 Patent. Defendants deny that Defendants have been or still are inducing others to directly infringe the ’967 Patent. Defendants deny any remaining allegations or characterizations contained in Paragraph 56.

57. Paragraph 57 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants will continue to infringe the ’967 Patent unless enjoined by this Court.

58. Paragraph 58 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Defendants infringe the ’967 Patent.

Defendants deny that any alleged infringement is intentional, willful, and deliberate, and with conscious disregard for Z-Man Fishing's rights.

59. Paragraph 59 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations and characterizations of Paragraph 59.

60. Paragraph 60 states a legal conclusion to which no response is required.

## FOURTH CAUSE OF ACTION
## Alleged Trade Dress Infringement

61. Defendants repeat and restate each of its preceding responses to the allegations of the Amended Complaint as if fully set forth herein.

62. Defendants deny the allegations or characterizations of Paragraph 62.

63. Defendants deny the allegations or characterizations of Paragraph 63.

64. Defendants deny the allegations or characterizations of Paragraph 64.

65. Defendants deny the allegations or characterizations of Paragraph 65.

66. Defendants deny the allegations or characterizations of Paragraph 66.

67. Defendants deny the allegations or characterizations of Paragraph 67.

68. Defendants deny the allegations or characterizations of Paragraph 68.

## PRAYER FOR RELIEF

Paragraphs a. through s. of the Amended Complaint set forth the relief requested by Plaintiff, to which no response is required. Nonetheless, to the extent Paragraphs a. through s. are deemed to contain allegations, Defendants deny each such allegation. Defendants further deny that Plaintiff is entitled to any relief sought in its Prayer for Relief or otherwise.

## AFFIRMATIVE DEFENSES

69. Pursuant to Federal Rule of Civil Procedure 8(c), Defendants, without waiver, limitation, or prejudice, hereby assert the following affirmative defenses:

## FIRST DEFENSE—NON-INFRINGEMENT OF THE ASSERTED PATENTS

70. Plaintiff's claims are barred in whole or in part because Defendants have not directly infringed, induced infringement, or contributed to infringement, and do not directly infringe, induce infringement, or contribute to infringement, of any valid and enforceable claim of the Asserted Patents, either literally or under the Doctrine of Equivalents, and have not otherwise committed any acts in violation of 35 U.S.C. § 271. Paragraphs 25-31, 37-42, and 48-53 of Defendants' Amended Counterclaims are incorporated by reference as if set forth in full herein. The bases provided in these paragraphs are exemplary only and should not be construed as limiting in any way the defenses that Defendants will present in this case.

71. At a minimum, and *inter alia*, Defendants do not make, use, sell, offer for sale, or import the Switch Blade product in combination with a "jig," "jig body," or "body," which is a limitation of every claim of the Asserted Patents.

72. In addition, and *inter alia*, assuming *arguendo* that Defendants' Switch Blade product were to contact a jig body when combined with a third-party lure, any such contact would not be made by the "edge" recited in the claims of the Asserted Patents, but rather with the folded tab shown in the photograph in Paragraph 17 of the Amended Complaint. Similarly, assuming *arguendo* that Defendants' Switch Blade product were to contact an eyelet when combined with a third-party lure, any such contact would not be made by the "edge" recited in the claims of the Asserted Patents, but rather with the folded tab or the retaining bar shown in the photograph in Paragraph 17 of the Amended Complaint.

**SECOND DEFENSE—INVALIDITY OF THE ASSERTED PATENTS UNDER 35 U.S.C. § 112 WRITTEN DESCRIPTION REQUIREMENT**

73. Plaintiff's claims are barred in whole or in part because each claim of the Asserted Patents is invalid for failure to comply with 35 U.S.C. § 112, written description requirement.

74. At a minimum, and *inter alia*, any attempt by Plaintiff to construe the claims of the Asserted Patents in such a way as to cover Defendants' Switch Blade product lacks support under 35 U.S.C. § 112.

**THIRD DEFENSE—INVALIDITY OF THE ASSERTED PATENTS UNDER 35 U.S.C. § 112 REQUIREMENT TO PARTICULARLY POINT OUT AND DISTINCTLY CLAIM THE INVENTION**

75. Plaintiff's claims are barred in whole or in part because each claim of the Asserted Patents is invalid for failure to comply with 35 U.S.C. § 112 for failure to particularly claim the invention.

76. For example, it is not clear how one of ordinary skill in the art would understand "the movement [of the blade] being limited by the first edge striking one of at the body or at another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole," as recited in the claims of the '967 Patent.

77. As another example, it is not clear how one of ordinary skill in the art would understand "the side-to-side motion being defined either by the first edge of the blade member striking a first side of the body and striking a second side of the body opposite the first side or by the first edge of the blade member striking another portion of the wire loon that is opposite the portion of the wire loop positioned through the mounting hole," as recited in the claims of the '062 Patent.

78. As another example, it is not clear how one of ordinary skill in the art would understand "said edge strikes said jig body," "whereby said blade oscillates in a side-to-side

motion about said joining mechanism, the striking of said edge upon said jig body limiting the oscillation in one direction," "said blade travels in a side-to-side motion defining an arcuate path, said first edge striking one of said jig body and said eyelet when traveling in said arcuate path, said arcuate path defining two endpoints, each of said two endpoints residing where said first edge strikes one of said jig body and another portion of said eyelet that is opposite said portion of said eyelet disposed through said mounting hole," "said blade travels in a side-to-side oscillation, said first edge striking one of said jig body and said eyelet in said oscillation, said oscillation defining two endpoints, each of said two endpoints residing where said first edge strikes one of said jig body and another portion of said eyelet that is opposite said portion of said eyelet disposed through said mounting hole," or "said first edge strikes said body of said jig or another portion of said eyelet that is opposite said portion of said eyelet positioned through said mounting hole," as recited in the claims of the '978 Patent.

**FOURTH DEFENSE—INVALIDITY OF THE ASSERTED PATENTS UNDER 35 U.S.C. § 102 AND/OR § 103**

79. Plaintiff's claims are barred in whole or in part because each asserted claim of the Asserted Patents is invalid for failure to comply with the requirements of 35 U.S.C. §§ 102, 103, and/or any other applicable statutory provisions of Title 35 of the United States Code. At a minimum, and *inter alia*, the claims of the Asserted Patents are invalid because they are anticipated and/or rendered obvious in light of available prior art. Paragraphs 32-36, 43-47, and 54-58 of Defendants' Amended Counterclaims are incorporated by reference as if set forth in full herein. The bases provided in these paragraphs are exemplary only and should not be construed as limiting in any way the defenses that Defendants will present in this case.

**FIFTH DEFENSE—PROSECUTION HISTORY ESTOPPEL**

80. Plaintiff's claims are barred in whole or in part by reason of estoppel.

81. Plaintiff is estopped from construing any valid claim of the Asserted Patents to be infringed or to have been infringed, either literally or by application of the Doctrine of Equivalents, by the Switch Blade product in view of prior art and/or because of admissions, representations, and/or statements made to the Patent Office during prosecution of any application leading to the issuance of the Asserted Patents, because of the disclosures or language in the specification of the Asserted Patents, and/or because of limitations in the claims of the Asserted Patents.

## SIXTH DEFENSE—FAILURE TO MARK

82. To the extent that Plaintiff and/or any predecessors in interest or any licensees to the Asserted Patents failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that Defendants' actions allegedly infringe the Asserted Patents, Defendants are not liable to Z-Man Fishing for the acts alleged to have been performed before Defendants received actual notice that the accused Switch Blade product was allegedly infringing the Asserted Patents.

## SEVENTH DEFENSE—LACHES, ESTOPPEL, AND WAIVER

83. Plaintiff's attempted enforcement of the Asserted Patents against Defendants is barred by laches, estoppel, and waiver.

## EIGHTH DEFENSE—REMEDIES

84. Plaintiff's claim for injunctive relief is barred because there exists an adequate remedy at law, and Plaintiff's claims otherwise fail to meet the requirements for such relief.

## NINTH DEFENSE—TRADE DRESS IS GENERIC

85. Plaintiff lacks any valid or enforceable trade dress rights because at the time of Plaintiff's first use of its alleged trade dress, the primary significance to the relevant purchasing public of a hexagonal blade in the context of fishing lures was, and continues to be, as a kind or

type or category or sub-category of fishing lure, as a result of which Plaintiff's alleged trade dress was and is generic.

**<u>TENTH DEFENSE—TRADE DRESS IS FUNCTIONAL</u>**

86. Plaintiff lacks any valid or enforceable trade dress rights because a hexagonal blade in the context of fishing lures is functional, including without limitation that a hexagonal blade imparts a particular wide wobble motion in the water that anglers find beneficial in attracting fish, and that the hexagonal shape deflects easily off underwater structures and therefore snags less than other shapes.

**<u>ELEVENTH DEFENSE—FRAUD ON THE TRADEMARK OFFICE</u>**

87. Plaintiff's U.S. Trademark Registration No. 3505384 is invalid and unenforceable because it was procured by fraud on the U.S. Trademark Office, as specifically alleged in Paragraphs 74 through 93 of the Amended Counterclaims appearing below, the allegations of which are incorporated herein by this reference.

**<u>RESERVATION OF ALL AFFIRMATIVE DEFENSES</u>**

88. Defendants hereby give notice that they intend to rely upon any matter constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, and that they reserve the right to seek leave to amend this Answer to add to, amend, withdraw, or modify these defenses as their investigation continues and as discovery may require, up to and including the time of trial.

**<u>AMENDED COUNTERCLAIMS</u>**

Counterclaimants Jeffrey C. Queen ("Mr. Queen") and Queen Tackle LLC ("Queen Tackle")(collectively "Defendants"), through their undersigned counsel, counterclaim and allege against Z-Man Fishing Products, Inc. ("Z-Man Fishing") as follows:

## PARTIES

1. Defendant and Counterclaimant Jeffrey C. Queen is a natural person who is a citizen and resident of Catawba, North Carolina, in this judicial district.

2. Defendant and Counterclaimant Queen Tackle LLC is a limited liability company organized and in good standing under the laws of the State of North Carolina with its principal place of business in Catawba, North Carolina, in this judicial district.

3. Plaintiff and Counterclaim Defendant Z-Man Fishing Products, Inc. ("Z-Man Fishing") is, upon information and belief and as pleaded by Z-Man Fishing in its Amended Complaint, a South Carolina corporation with its principal place of business in Charleston County, South Carolina.

## JURISDICTION

4. These Amended Counterclaims arise under the U.S. Patent Laws, 35 U.S.C. §§ 1 *et seq*.; the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5. This Court has original jurisdiction over the subject matter of these Amended Counterclaims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6. This Court has personal jurisdiction over Z-Man Fishing because, *inter alia*, it has availed itself of the rights and privileges of this forum by suing Defendants in this judicial district.

## Z-MAN FISHING'S ASSERTED PATENTS

7. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 6 of their Amended Counterclaims.

8. Z-Man Fishing is shown on the USPTO's online assignment database as the current owner of record of U.S. Patent No. 7,627,978 ("the '978 Patent"). The first page of the '978 Patent

lists an issue date of December 8, 2009.

9. Z-Man Fishing is shown on the USPTO's online assignment database as the current owner of record of U.S. Patent No. 7,736,062 ("the '062 Patent"). The first page of the '062 Patent lists an issue date of June 1, 2010.

10. Z-Man Fishing is shown on the USPTO's online assignment database as the current owner of record of U.S. Patent No. 9,253,967 ("the '967 Patent"). The first page of the '967 Patent lists an issue date of February 9, 2016.

11. Z-Man Fishing has alleged, and Mr. Queen and Queen Tackle deny, that acts by Mr. Queen and Queen Tackle infringe the '978 Patent, the '062 Patent, and the '967 Patent (collectively, the "Asserted Patents").

12. Accordingly, an actual controversy exists between Mr. Queen and Queen Tackle, on the one hand, and Z-Man Fishing, on the other. The controversy is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

## Z-MAN FISHING'S ASSERTED TRADEMARK REGISTRATION

13. Z-Man Fishing is shown on the USPTO's online TESS database as the current owner of record of U.S. Trademark Registration No. 3505384 ("the Asserted Registration"), which claims the exclusive right to use the following product shape:



on and in connection with "Fishing lures" in International Class 28.

14. The Asserted Registration describes the claimed mark as follows:

> The mark consists of a configuration consisting of the five unattached sides of a hexagonal blade portion of a fishing lure, wherein the sixth unclaimed side of the hexagonal blade is closest to the connection point between the blade and a jig portion of said fishing lure. The attached hardware and the lower edge of the hexagonal blade, all shown in broken lines, are not claimed as part of the mark.

15. The Asserted Registration issued September 23, 2008, based on an application filed by Rad Lures Inc., Z-Man Fishing's predecessor in interest, on August 18, 2006 ("the 2006 Trademark Application"). The 2006 Trademark Application claimed that the purported mark was first used on March 26, 2004.

16. In a subsequent sworn declaration filed with the U.S. Trademark Office in support of the 2006 Trademark Application, the President of Rad Lures Inc. asserted that Rad Lures Inc. had "exclusively used the hexagonal blade since October 2003."

**<u>THIRD PARTY USE OF FISHING LURES WITH HEXAGONAL BLADES</u>**

17. Hexagonal blades have been used by unrelated parties on or as part of fishing lures at least since the 1960s.

18. The "Walker Special" was a fishing lure with a hexagonal blade designed by Crawford Walker that was patented in 1960, and was marketed by Southeastern Products, Inc. of Charlotte, NC. Following is an image of the Walker Special:



19. Beginning in the 1980s, a company called Poe's Lures manufactured, marketed and sold two lures designed by legendary professional fisherman Rick Clunn, known as the RC1 and RC3. Both had hexagonal shaped blades appearing as follows:



20. Rick Clunn won the 1990 Bassmasters Classic professional bass fishing tournament using the RC1 and the RC3, attracting significant publicity for the products and their hexagonal shaped blades.

21. In the 1990s and early 2000s, many other fishing lures with hexagonal shaped blades came to market, including without limitation the "Bagley Balsa B," the "Bomber Square A," the "Bill Norman Mad N," the "LuckyCraft CB-001," and others.

22. Fishing lures having hexagonal shaped blades came to be commonly known to anglers as "coffin bill" or "coffin lip" lures, after the elongated hex shape that looks like a traditional coffin.

23. In 2005, at least eight different coffin bill lures were offered by Bass Pro Shops, a leading retailer of bass fishing equipment.

24. Coffin bill lures have been widely successful because they provide useful benefits over other blade designs. Among these benefits are that the hexagonal shape produces a particular wide-wobble behavior in the water believed to attract fish in various conditions, and that the chamfered corners enable the blade to deflect more easily off of underwater structures, making the lure less prone to snags than lures with other blade shapes.

## COUNT I
**Declaration of Noninfringement of U.S. Patent No. 7,627,978**

25. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 24 of their Amended Counterclaims.

26. Z-Man Fishing purports to charge Mr. Queen with direct infringement and both Defendants with indirect infringement of the ’978 Patent in its Amended Complaint. (Dkt. 13 [Amended Complaint], First Cause of Action.)

27. No asserted claim of the ’978 Patent has been or is infringed, directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of the Queen Tackle Switch Blade product through the manufacture, use, importation, sale, and/or offer for sale of the Queen Tackle Switch Blade product.

28. Z-Man Fishing’s Amended Complaint does not purport to charge Mr. Queen and Queen Tackle with infringement of any specific claim of the ’978 Patent. Claim 1 of the ’978 Patent reads as follows (claim element enumeration added for convenience):

| **Claim 1** | |
|---|---|
| [a] | 1. A fishing lure comprising: |
| [b] | a jig having a body with a longitudinal axis, an uppermost surface, a rearward surface, and a hook, said hook including a shank and a hook end, said shank being surrounded by and protruding rearwardly from said body and said hook end being spaced rearwardly behind said rearward surface of said body along said longitudinal axis of said body; |
| [c] | a blade having an edge proximal said jig body, wherein, during retrieval, said edge strikes said jig body and a majority of said blade is oriented above said uppermost surface of said jig body; and |
| [d] | a mechanism for joining said jig body and said blade together, said mechanism comprising an eyelet being immovable relative to said jig body and extending from said jig body and through said blade along said edge, whereby said blade oscillates in a side-to-side motion about said joining mechanism, the striking of said edge upon said jig body limiting the oscillation in one direction. |

29. Claim 1 of the ’978 Patent has not been infringed, and is not infringed, either directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of Queen Tackle’s Switch Blade product, at least because, by way of non-limiting example, the Switch Blade product does not satisfy the following claim limitations: 1[c] and/or 1[d].

30. Claim 1 of the ’978 Patent has not been infringed, and is not infringed, either directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of Queen Tackle’s Switch Blade product, at least because, by way of non-limiting example, the Switch Blade product is a staple article or commodity of commerce suitable for substantial noninfringing uses.

31. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Mr. Queen and Queen Tackle request the declaration of the Court that Mr. Queen and Queen Tackle do not infringe and have not infringed any claim of the ’978 Patent.

## COUNT II
## Declaration of Invalidity of U.S. Patent No. 7,627,978

32. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 31 of their Amended Counterclaims.

33. One or more claims of the ’978 Patent fails to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. § 101, *et. seq.*, including §§ 101, 102, 103, and/or 112. By way of a non-limiting example, claim 1 of the ’978 Patent is anticipated and/or rendered obvious in view of U.S. Patent No. 3,241,261 to Ament and/or U.S Patent No. 5,673,508 to Snyder.

34. U.S. Patent Application Serial No. 353,764, which resulted in U.S. Patent No. 3,241,261, issued on March 22, 1966. Because the issue date of this patent predates the earliest

application to which the ’978 Patent claims priority by more than one year, it qualifies as prior art under at least 35 U.S.C. §§ 102(a), 102(b), and/or 102(e).

35. U.S. Patent Application No. 417,971, which resulted in U.S. Patent No. 5,673,508, issued on October 7, 1997. Because the issue date of this patent predates the earliest application to which the ’978 Patent claims priority by more than one year, it qualifies as prior art under at least 35 U.S.C. §§ 102(a), 102(b), and/or 102(e).

36. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Mr. Queen and Queen Tackle request the declaration of the Court that one or more claims of the ’978 Patent is invalid.

## COUNT III
## Declaration of Noninfringement of U.S. Patent No. 7,726,062

37. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 36 of their Amended Counterclaims.

38. Z-Man Fishing purports to charge Mr. Queen with direct infringement and both Defendants with indirect infringement of the ’062 Patent in its Amended Complaint. (Dkt. 13 [Amended Complaint], Second Cause of Action.)

39. No asserted claim of the ’062 Patent has been or is infringed, directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of the Queen Tackle Switch Blade product through the manufacture, use, importation, sale, and/or offer for sale of the Queen Tackle Switch Blade.

40. Z-Man Fishing’s Amended Complaint does not purport to charge Mr. Queen and Queen Tackle with infringement of any specific claim of the ’062 Patent. Claim 1 of the ’062 Patent reads as follows (claim element enumeration added for convenience):

| **Claim 1** |
| --- |

| | |
|---|---|
| [a] | 1. A fishing lure comprising: |
| [b] | (a) a body having a forward portion, a rearward portion, and a longitudinal axis, the forward portion defining a width; |
| [c] | (b) a wire loop fixed within and extending from the forward portion of the body; |
| [d] | (c) a hook attached to and extending rearwardly from the body along the longitudinal axis of the body, the hook having a hook end spaced apart from the rearward portion of the body; and |
| [e] | (d) a blade member, the blade member |
| [f] | (i) having a first edge located proximate to the wire loop and |
| [g] | (ii) defining therethrough a mounting hole in proximity to the first edge, through which mounting hole a portion of the wire loop is positioned; and |
| [h] | (iii) further defining therethrough a pair of line attachment holes, to which pair of line attachment holes a fishing line is attached; |
| [i] | whereby, as the lure is pulled through the water, a majority of the blade member is oriented above the body and the blade member moves in a side-to-side motion relative to the body, the side-to-side motion being defined either by the first edge of the blade member striking a first side of the body and striking a second side of the body opposite the first side or by the first edge of the blade member striking another portion of the wire loon that is opposite the portion of the wire loop positioned through the mounting hole. |

41. Claim 1 of the ’062 Patent has not been infringed, and is not infringed, either directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of Queen Tackle’s Switch Blade product, at least because, by way of non-limiting example, the Switch Blade product does not satisfy the following claim limitations: 1[f], 1[g], 1[h], and/or 1[i].

42. Claim 1 of the ’062 Patent has not been infringed, and is not infringed, either directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of Queen Tackle’s Switch Blade product, at least because, by way of non-limiting example, the Switch Blade product is a staple article or commodity of commerce suitable for substantial noninfringing uses.

**COUNT IV**
**Declaration of Invalidity of U.S. Patent No. 7,726,062**

43. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 42 of their Amended Counterclaims.

44. One or more claims of the ’062 Patent fails to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. § 101, *et. seq.*, including §§ 101, 102, 103, and/or 112. By way of a non-limiting example, claim 1 of the ’062 Patent is anticipated and/or rendered obvious in view of U.S. Patent No. 3,241,261 to Ament and/or U.S Patent No. 5,673,508 to Snyder.

45. U.S. Patent Application Serial No. 353,764, which resulted in U.S. Patent No. 3,241,261, issued on March 22, 1966. Because the issue date of this patent predates the earliest application to which the ’062 Patent claims priority by more than one year, it qualifies as prior art under at least 35 U.S.C. §§ 102(a), 102(b), and/or 102(e).

46. U.S. Patent Application No. 417,971, which resulted in U.S. Patent No. 5,673,508, issued on October 7, 1997. Because the issue date of this patent predates the earliest application to which the ’062 Patent claims priority by more than one year, it qualifies as prior art under at least 35 U.S.C. §§ 102(a), 102(b), and/or 102(e).

47. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Mr. Queen and Queen Tackle request the declaration of the Court that one or more claims of the ’062 Patent is invalid.

**COUNT V**
**Declaration of Noninfringement of U.S. Patent No. 9,253,967**

48. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 47 of their Amended Counterclaims.

49. Z-Man Fishing purports to charge Mr. Queen with direct infringement and both Defendants with indirect infringement of the ’967 Patent in its Amended Complaint. (Dkt. 13 [Amended Complaint], Third Cause of Action.)

50. No asserted claim of the ’967 Patent has been or is infringed, directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of the Queen Tackle Switch Blade product through the manufacture, use, importation, sale, and/or offer for sale of the Queen Tackle Switch Blade product.

51. Z-Man Fishing’s Amended Complaint does not purport to charge Mr. Queen and Queen Tackle with infringement of any specific claim of the ’967 Patent. Claim 1 of the ’967 Patent reads as follows (claim element enumeration added for convenience):

| **Claim 1** | |
|---|---|
| [a] | 1. A fishing lure comprising: |
| [b] | a hook, the hook including a shank having a first width; |
| [c] | a jig body having a second width, a forward portion, and a longitudinal axis, the body secured around and encircling the shank, the first and second widths extending perpendicular to the longitudinal axis of the jig body and the second width being greater than the first width; |
| [d] | a curved wire extending from the forward portion of the body; and |
| [e] | a blade having a first edge located proximate the forward portion of the body and defining therethrough a mounting hole proximate the first edge, the positioning of a portion of the curved wire through the mounting hole attaching the blade to the body; |
| [f] | wherein, as the lure is pulled through the water, a majority of the blade is oriented above the body and the lure exhibits a vibrating action as the blade is moved from side to side, the movement of the blade being limited by the first edge striking one of at the body or at another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole. |

52. Claim 1 of the ’967 Patent has not been infringed, and is not infringed, either directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of Queen Tackle’s Switch Blade product, at least

because, by way of non-limiting example, the Switch Blade product does not satisfy the following claim limitations: 1[e], and/or 1[f].

53. Claim 1 of the ’967 Patent has not been infringed, and is not infringed, either directly, contributorily, or by inducement, literally or under the Doctrine of Equivalents, by Mr. Queen or Queen Tackle, or by purchasers of Queen Tackle’s Switch Blade product, at least because, by way of non-limiting example, the Switch Blade product is a staple article or commodity of commerce suitable for substantial noninfringing uses.

**COUNT VI**
**Declaration of Invalidity of U.S. Patent No. 9,253,967**

54. Mr. Queen and Queen Tackle incorporate by reference the allegations contained in Paragraphs 1 to 53 of their Amended Counterclaims.

55. One or more claims of the ’967 Patent fails to meet the conditions of patentability and/or otherwise comply with one or more provisions of 35 U.S.C. § 101, *et. seq.*, including §§ 101, 102, 103, and/or 112. By way of a non-limiting example, claim 1 of the ’967 Patent is anticipated and/or rendered obvious in view of U.S. Patent No. 3,241,261 to Ament and/or U.S Patent No. 5,673,508 to Snyder.

56. U.S. Patent Application Serial No. 353,764, which resulted in U.S. Patent No. 3,241,261, issued on March 22, 1966. Because the issue date of this patent predates the earliest application to which the ’967 Patent claims priority by more than one year, it qualifies as prior art under at least 35 U.S.C. §§ 102(a), 102(b), and/or 102(e).

57. U.S. Patent Application No. 417,971, which resulted in U.S. Patent No. 5,673,508, issued on October 7, 1997. Because the issue date of this patent predates the earliest application to which the ’967 Patent claims priority by more than one year, it qualifies as prior art under at least 35 U.S.C. §§ 102(a), 102(b), and/or 102(e).

58. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Mr. Queen and Queen Tackle request the declaration of the Court that one or more claims of the ’967 Patent is invalid.

## COUNT VII
## Cancellation of Asserted Registration For Genericness—15 U.S.C. § 1064(3)

59. The allegations of Paragraphs 1 through 58 of the Amended Counterclaims are incorporated by this reference.

60. Defendants have standing to pursue this claim for cancellation of the Asserted Registration because Z-Man Fishing has relied on the Asserted Registration in support of its trade dress infringement claim against Defendants.

61. At and immediately prior to the filing of the 2006 Trademark Application, and at and immediately prior to the claimed first use of the hexagonal blade by Z-Man Fishing’s predecessor in either March 2004 or October 2003, the primary significance to the relevant purchasing public of a hexagonal-shaped blade used on and in connection with fishing lures was as a class or category or sub-category of fishing lures, namely the class known as “coffin bill” or “coffin lip” lures.

62. As a result of the foregoing, the subject matter of the Asserted Registration was at all relevant times and is now generic for fishing lures, and incapable of protection as a trademark.

63. The Asserted Registration should therefore be cancelled as generic pursuant to Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3).

64. These circumstances warrant this Court’s exercise of its power pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, to order the cancellation of the Asserted Registration.

## COUNT VIII

**Cancellation of Asserted Registration For Functionality—15 U.S.C. § 1064(3)**

65. The allegations of Paragraphs 1 through 64 of the Amended Counterclaims are incorporated by this reference.

66. Defendants have standing to pursue this claim for cancellation of the Asserted Registration because Z-Man Fishing has relied on the Asserted Registration in support of its trade dress infringement claim against Defendants.

67. U.S. Patent No. 7,726,062, which is one of the patents asserted by Z-Man Fishing against Defendants in this action, claims the following invention in Claim 2: "The fishing lure of claim 1, wherein the blade member has a hexagonal shape." The necessary implication of this claim is that a blade member having a hexagonal shape is a useful feature of the invention.

68. U.S. Patent No. 9,253,967, which is another of the patents asserted by Z-Man Fishing against Defendants in this action, claims the following invention in Claim 4: "The fishing lure of claim 2, wherein the blade has the shape of an elongated hexagon." The necessary implication of this claim is that a blade having the shape of an elongated hexagon is a useful feature of the invention.

69. Because of the useful benefits that a hexagonal shaped blade provides for fishing lures as alleged above, the subject matter of the Asserted Registration was and is functional for fishing lures, and is incapable of protection as a trademark.

70. The Asserted Registration should therefore be cancelled as functional pursuant to Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3).

71. These circumstances warrant this Court's exercise of its power pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, to order the cancellation of the Asserted Registration.

**<u>Count IX</u>**
**Fraud on the Trademark Office—15 U.S.C. §§ 1064(3) and 1120**

72. The allegations of Paragraphs 1 through 71 of the Amended Counterclaims are incorporated by this reference.

73. Defendants have standing to pursue this claim for cancellation of the Asserted Registration because Z-Man Fishing has relied on the Asserted Registration in support of its trade dress infringement claim against Defendants.

74. On December 22, 2006, the U.S. Trademark Office issued a non-final Office Action ("the 2006 Office Action") refusing the 2006 Trademark Application on the grounds that "the proposed three-dimensional configuration mark appears to be functional for the identified goods," and that "the proposed mark consists of a nondistinctive configuration of the goods that does not function as a trademark," among other grounds.

75. Among other information and documentation, the Office Action specifically required the applicant to "state whether the proposed mark is or has been the subject of a patent application for either a design or utility patent, including both pending and abandoned patent applications;" to "provide copies of the patent(s) or pending or abandoned patent application(s);" and to provide "a written explanation and any available information concerning designs used by competitors."

**<u>Misrepresentations as to Distinctiveness</u>**

76. On June 21, 2007, Ron Anthony Davis, who was then President of Rad Lures Inc., signed and caused to be filed with the U.S. Trademark Office a sworn Declaration in response to the 2006 Office Action, in which he made the following affirmative representations of fact, among others:

- "a hexagonal blade such as the Chatterblade [Rad Lures Inc.'s product] had never

been used in connection with a fishing lure prior to its use in the Chatterbait product line."

- "the specific hexagonal shape of the Chatterblade is unique in the industry and never existed before its use by Rad Lures Inc."
- "Rad Lures Inc. has exclusively used the hexagonal blade since October 2003."

77. Also on June 21, 2007, James Ronald Davis, who was then Vice President of Rad Lures Inc. and the professed inventor of the Chatterblade lure, signed and caused to be filed with the U.S. Trademark Office a sworn Declaration in response to the 2006 Office Action, in which he made exactly the same factual representations as those made by Ron Anthony Davis as set out in Paragraph 76, above.

78. Each of the representations made by Ron Anthony Davis and James Ronald Davis were false, in that hexagonal shaped blades had been used on fishing lures at least since the Walker Special in the 1960s, and such coffin bill lures were in wide use and distribution at the time of the claimed "exclusive" adoption of a hexagonal blade by Rad Lures Inc. in October 2003, all as alleged above.

79. Rad Lures Inc. made no disclosure to the U.S. Trademark Office, either through the Declarations of Ron Anthony Davis and James Ronald Davis or otherwise, of the long and widespread use of coffin bill lures featuring hexagonal blades as alleged above.

80. Upon information and belief, Rad Lures Inc. and its officers Ron Anthony Davis and James Ronald Davis were aware that the above-described representations and omissions were false. James Ronald Davis claimed in his Declaration to have been "a recreational fisherman of the past 50 years," and claimed to be "familiar with the fishing lure industry and the types and designs of fishing lures on the market." Similarly, Ron Anthony Davis claimed in his Declaration

to have been "a recreational fisherman of the past 30 years," and claimed to be "familiar with the fishing lure industry and the types and designs of fishing lures on the market."

81. No fisherman having the experience and familiarity with the fishing lure industry claimed by each of the Davises could have been unaware of the long and widespread use of hexagonal blades in connection with fishing lures as alleged above. In fact, in 2014 Ron Anthony Davis gave an interview to *Bassmaster Magazine* about his development of the ChatterBait product in which the following statement appears:

> The six-sided blade wasn't anything new. Ronny Davis was aware of the Walker Special, a lure created by Walker Crawford in North Carolina decades earlier that featured a hexagonal blade.

*See* https://www.bassmaster.com/gear/lets-chat-about-chatterbaits.

82. The misrepresentations and omissions described above were material. The Office Action had specifically required Rad Lures Inc. to provide "any available information concerning designs used by competitors." Had the U.S. Trademark Office been informed of the long and widespread use of hexagonal blades in connection with fishing lures by numerous competitors as alleged above, such information likely would have led to final refusal of the 2006 Trademark Application on grounds of genericness or failure to function as a mark.

**Misrepresentations as to Functionality**

83. In response to the 2006 Office Action, Rad Lures Inc. disclosed to the U.S. Trademark Office only one pending U.S. Patent Application, No. US2005/0210731 A1, filed in 2004 ("the 2004 Patent Application"), that being the application that eventually resulted in the issuance of U.S. Patent No. 7,627,978.

84. In his June 21, 2007, Declaration, James Ronald Davis stated accurately that the 2004 Patent Application "does not claim the hexagonal shape or any specific blade shape as essential to the function of the lure." Davis made no reference to or disclosure of a second pending

patent application which had then been filed approximately two months before ("the 2007 Patent Application"), which eventually resulted in the issuance of U.S. Patent No. 7,726,062, nor did Rad Lures Inc. otherwise disclose the existence of the 2007 Patent Application to the U.S. Trademark Office in any way.

85. On May 9, 2008, while the 2006 Trademark Application was still pending, the claims asserted in the 2007 Patent Application were amended by, inter alia, adding a separate claim for "The fishing lure of claim [1], wherein the blade member has a hexagonal shape," which eventually became Claim 2 of the issued '062 patent.

86. Neither James Ronald Davis nor Rad Lures Inc. disclosed this amended claim asserted in the 2007 Patent Application to the U.S. Trademark Office.

87. The amendment of the 2007 Patent Application was material to the pending 2006 Trademark Application, in that the assertion of a utility patent claim having as its only separate patentable feature a blade member with a hexagonal shape provided strong, and arguably conclusive, evidence of the functionality of that feature.

88. Upon information and belief, James Ronald Davis as the inventor of the invention claimed in the 2007 Patent Application had actual knowledge that the failure to disclose the amended claim asserted in the 2007 Patent Application rendered materially false his prior sworn representation to the U.S. Trademark Office that the only pending patent application "does not claim the hexagonal shape".

89. By failing to disclose this material development, Rad Lures Inc. was able to procure issuance of the Asserted Registration for a hexagonal blade shape in September 2008 while concealing from the U.S. Trademark Office that utility patent protection was simultaneously being sought for the same hexagonal blade shape.

90. Z-Man Fishing as the successor in interest to Rad Lures Inc. with respect to the Asserted Registration is fully responsible for the material misrepresentations and omissions alleged above.

91. As a result of each of the foregoing intentional and material misrepresentations and omissions, the Asserted Registration was procured by fraud on the U.S. Trademark Office, and the Asserted Registration should therefore be cancelled pursuant to Section 14(3) of the Lanham Act, 15 U.S.C. § 1064(3).

92. These circumstances warrant this Court's exercise of its power pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, to order the cancellation of the Asserted Registration.

93. The conduct of Z-Man Fishing and its predecessors in procuring the Asserted Registration by fraud on the U.S. Trademark Office as above alleged is in violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120.

94. Defendants and each of them have sustained monetary loss and damage as a proximate result of Z-Man Fishing's conduct in violation of 15 U.S.C. § 1120, including but not limited to the costs and attorney fees Defendants have been and will be required to expend in defending Z-Man Fishing's attempt to enforce the Asserted Registration in this proceeding. The amount of Defendants' damages is not reasonably ascertainable at present, but will be proved with specificity at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request that this Court enter judgment against Plaintiff and in favor of Defendants as follows:

a. An order dismissing with prejudice each and every claim asserted in the Amended Complaint without recovery thereon;

b. A declaration that Mr. Queen and Queen Tackle have not and do not infringe any valid and enforceable claim of any of the Asserted Patents;

c. A declaration that the Asserted Patents are invalid;

d. As an alternative, for any of the Asserted Patents found to be actually infringed by Mr. Queen and Queen Tackle and not invalid or unenforceable, and to the extent that the jury does not award a paid-up royalty for such patent(s), a determination of a prospective royalty (*see Paice LLC v. Toyota Motor Corp.*, 503 F.3d 1293 (Fed. Cir. 2007));

e. An order cancelling U.S. Trademark Registration No. 3505384 pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, and certification of such order to the U.S. Trademark Office;

f. An award to Defendants of their damages sustained by reason of Z-Man Fishing's procurement of U.S. Trademark Registration No. 3505384 by means of fraud on the U.S. Trademark Office and attempt to enforce the same against Defendants;

g. An order barring Z-Man Fishing and its officers, agents, servants, employees, attorneys, and others in active concert or participation with them from asserting infringement or instituting or continuing any legal action for infringement of the Asserted Patents or the Asserted Registration or any alleged common law trade dress rights against Mr. Queen or Queen Tackle, or their suppliers, manufacturers, distributors, resellers of its products, customers, or end users of their products;

h. An award of expenses, costs, and disbursement in this action, including prejudgment interest;

i. An order declaring that this is an exceptional case and awarding Mr. Queen and Queen Tackle their reasonable attorney fees under 35 U.S.C. § 285;

j. A trial by jury of all issues properly so triable; and

k. Such other and additional relief as this Court may deem just and proper.

Dated: February 21, 2020


**/s/ Rodrick J. Enns**
Rodrick J. Enns, N.C. Bar No. 12151
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC 27101
Telephone: (336) 723-5180
E-mail: renns@ennsandarcher.com

**/s/ Douglas W. Meier**
Douglas W. Meier, N.C. Bar No. 52722
NK PATENT LAW
4917 Waters Edge Dr., Ste 275
Raleigh, NC 27606
Telephone: (919) 348-2194
E-mail: dmeier@nkpatentlaw.com

*Attorneys for Defendants Jeffrey C. Queen and Queen Tackle LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Tasneem A. Dharamsi
tasneemdharamsi@parkerpoe.com

Timothy D. St. Clair
timstclair@parkerpoe.com

Attorneys for Plaintiff

Dated: February 21, 2020

**/s/ Rodrick J. Enns**
Rodrick J. Enns, N.C. Bar No. 12151
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC 27101
Telephone: (336) 723-5180
Facsimile: (336) 723-5181
E-mail: renns@ennsandarcher.com

*Attorney for Defendants Jeffrey C. Queen and Queen Tackle LLC*