**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:19-CV-00147-KDB-DCK**

| | |
|---|---|
| **Z-MAN FISHING PRODUCTS, INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| **JEFFREY C. QUEEN QUEEN TACKLE LLC,** | |
| **Defendants.** | |

**CLAIM CONSTRUCTION ORDER**

In this action, Plaintiff Z-Man Fishing Products, Inc. ("Z-Man") asserts patent infringement claims against Defendants Jeffrey C. Queen and Queen Tackle, LLC ("Queen") related to three patents for a "snag resistant fishing lure." The parties disagree on the construction of several claim terms of the patents at issue, U.S. Patent Nos. 7,627,978 ("the '978 Patent"), 7,726,062 ("the '062 Patent") and 9,253,967 ("the '967 Patent") (collectively, the "Asserted Patents") and also disagree on the definition of who should be considered a "person having ordinary skill in the art." The parties have fully briefed their respective proposed constructions and indicated to the Court that they do not believe a "Markman" claim construction hearing is necessary. Thus, this matter is ripe for decision.

Having carefully considered the parties' arguments, the patents at issue and other relevant evidence of record, the Court construes the disputed terms of the Asserted Patents and determines who should be considered a person of ordinary skill in the art in this action as follows:

1

## I.     THE ASSERTED PATENTS

The invention claimed in the '978 Patent," '062 Patent and '967 Patent is described as "a snag-resistant fishing lure having a blade member uniquely attached to a weighted jig body to substantially minimize the risk of losing the lure to an under-water snag and to provide an intense vibrating action as movement through water displaces the blade from side to side." *See, e.g.*, Doc. No. 1-1 at 13. Patent drawings showing a perspective view of the lure and a top view of the lure's blade's side to side action, are reproduced below.



As described in the Asserted Patents' specifications (which are identical in most respects), the principal improvement sought over prior art is that the invention promotes "snag-resistance," while including "a blade or other feature to create motion, and to reflect light, to give the jig a simulated natural swimming motion resembling a minnow or other food source for the sport fish being sought." *Id*. According to the patents,  "[w]hile many jigs are designed to attract fish in novel ways, none achieve a controlled vibrating action or address the problem of snagging without the aid of weed-guards in front of the hook point. There is a need for a lure that includes features

pertaining to snag avoidance with-out clumsy weed guards, and which also produces an under-water movement that is attractive to fish." *Id.*

II.     A "PERSON OF ORDINARY SKILL IN THE ART"

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). The Federal Circuit has held that a person of skill in the art is "a hypothetical person who is presumed to know the relevant prior art." *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (citing *Custom Accessories Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986)). In determining the level of ordinary skill, district courts may consider the "type of problems encountered in the art, prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1376 (Fed. Cir. 2012) (quoting *Custom Accessories*, 807 F.2d at 962).

The parties differ in their descriptions of who should be considered a person of ordinary skill in the art ("POSITA"). Z-Man contends that a POSITA for the Asserted Patents would be:

**an expert with three or more years of experience, and/or specialized knowledge, skill, training, or education, in designing, experimenting with, fabricating, and/or manufacturing mechanical devices having moving components.**

Queen proposes that a POSITA would be:

**a person having at least three years of regular recreational freshwater bass fishing, though the three years need not include continuous or daily fishing. It is sufficient to fish intermittently over the course of three years.**

The fundamental difference in the parties' proposals is Plaintiff's emphasis on mechanical experience, education or training and Defendants' exclusive focus on practical fishing experience. Plaintiff's suggested POSITA could thus include a mechanical engineering academic who had

3

never been near the water and Defendants' POSITA could be a 14 year old who had been fishing

on and off since he or she was 11. The Court accordingly views both proposals as partly appropriate

but clearly deficient. That is, a person with mechanical expertise but no fishing experience - and

vice-versa – would have only part of the necessary skill and experience to be a POSITA.

As noted above, in determining who is a POSITA the Court must consider a range of factors

which focus on real-world familiarity with the subject matter of the patent as well as relevant

educational or technical skills. The Court finds that a POSITA looking to practice the Asserted

Patents – i.e. designing and/or manufacturing fishing lures – would likely need to have

manufacturing or technical knowledge and/or training *and* at least some fishing experience or

knowledge. Therefore, the Court finds that a "person of ordinary skill in the art" for the purposes

of this action is defined as follows:

> **an expert with one or more years of experience, and/or specialized knowledge, skill, training, or education, in designing, experimenting with, fabricating, and/or manufacturing mechanical devices having moving components and at least one year of regular recreational freshwater fishing, though the year need not include continuous or daily fishing. In lieu of this combination of experience, a professional freshwater fishing guide or competitor with more than five years of experience or a person with two years' experience designing and manufacturing freshwater fishing lures will be considered a person of ordinary skill in the art**

III.    LEGAL STANDARDS GOVERNING CLAIM CONSTRUCTION

Analysis of patent infringement involves two steps. "The first step is determining the

meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview

Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). "The second step is comparing the

properly construed claims to the device accused of infringing." *Id.* It is the first step, "commonly

known as claim construction or interpretation," that is at issue at the present stage of this case. *Id.*

It is the court's role in claim construction to "analyze the text of the patent and its associated

public record and apply the established rules of construction, and in that way arrive at the true and

consistent scope of the patent owner's rights to be given legal effect." *Markman*, 52 F.3d at 979. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted). Thus, the goal of claim construction is to determine the meaning of the claims. *See id; O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

"To ascertain the meaning of claims," the court must consider primarily the "intrinsic record," comprised of "the claims, the specification, and the prosecution history." *Markman,* 52 F.3d at 979; *Phillips,* 415 F.3d at 1313. Prosecution history is the "public record" of proceedings in the Patent and Trademark Office, which may include statements by the inventor, or on his behalf, while a patent application is pending approval. Secondarily, the court may consider "extrinsic evidence" in the form of expert testimony, technical information and dictionaries. *Id.*

To start, "the claim construction analysis must begin and remain centered on the claim language itself." *Innova/Pure Water,* 381 F.3d at 1116. This Court must "look to the words themselves ... to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The "words of a claim are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quotations omitted). However, a claim term's "ordinary and customary" meaning is not necessarily the same as its "common" public meaning. Rather, the "ordinary and customary" meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention, i.e., as of the effective filing date of the patent application." *Id*. at 1313. A person of ordinary skill in the art "is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Multiform*

*Desiccants, Inc. v. Medzam*, Ltd., 133 F.3d 1473, 1477 (Fed. Cir. 1998). Where the ordinary meaning of a claim phrase or term is not apparent, a court may then act as would a person of ordinary skill in the art by looking to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova/Pure Water*, 381 F.3d at 1116.

When engaging in claim construction, courts must follow a hierarchy of evidence, with the first being claim language, the second consisting of other intrinsic evidence (i.e., the specification, the remainder of the patent, and the prosecution history), and the third being extrinsic evidence (i.e., evidence that is external to the patent and prosecution history, such as expert testimony or treatises). *Advanced Cardiovascular Sys. v. Medtronic*, 265 F.3d 1294, 1304 (Fed. Cir. 2001). This hierarchy of evidence does not, however, suggest that courts must consider and weigh all forms of evidence. Instead, if the intrinsic evidence provides a court with sufficient evidence to inform the claim construction, it need not descend and consider extrinsic evidence.

When a court considers intrinsic evidence, the specification is "the single best guide to the meaning of a disputed term" and most often "dispositive." *Phillips*, 415 F.3d at 1315. Courts must be cautious, however, to avoid limiting the scope of the claims by importing limitations of the specification into the scope of the claims. There is "a fine line between reading a claim in light of the specification and reading a limitation into the claim from the specification." *Id.* at 1323. Where a court construes "the claims based on the written description, the district court has committed one of the cardinal sins of patent law—reading a limitation from the written description into the claims." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1340 (Fed. Cir. 2001). Rather, "[c]laims must be read in view of the specification, of which they are a

6

part." *Id*. (citation and quotations omitted). Notably, the patentee need not "describe in the specification every conceivable and possible future embodiment of his invention." *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (internal citations omitted).

However, a patent's claims cannot "enlarge what is patented beyond what the inventor has described as the invention." *Biogen, Inc. v. Berlex Labs., Inc*., 318 F.3d 1132, 1140 (Fed. Cir. 2003) (quoting *Netword, LLC v. Centraal Corp*., 242 F.3d 1347, 1352 (Fed. Cir. 2001)). "When a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention," *Verizon Servs. Corp. v. Vonage Holdings Corp*., 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see also Techtronic Indus., Inc. v. International Trade Comm'n*, 944 F.3d 901, 907–08 (Fed. Cir. 2019). A patentee may disavow claim scope based on limiting statements such as "the present invention includes ..." or "the present invention is ..." or "all embodiments of the present invention are ...." *Luminara Worldwide, LLC v. Liown Elecs. Co*., 814 F.3d 1343, 1353 (Fed. Cir. 2016); *see also Wastow Enterprises, LLC v. TruckMovers.com, Inc*., No. 4:19-CV-00249-NKL, 2020 WL 2736981, at *2–3 (W.D. Mo. May 26, 2020).

Also, "the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* at 1317. Nevertheless, the court cannot "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." *3M Innovative Properties v. Tredegar Corp.,* 725 F.3d 1315, 1322 (Fed. Cir. 2013).

IV.    DISPUTED CLAIM CONSTRUCTIONS

The claim terms in the Asserted Patents on which the parties have not agreed on a construction are set out below. For all these claim terms, Plaintiff argues that the term should be given its "plain and ordinary" meaning while Defendants have suggested a different proposed meaning.[1] In its claim construction brief, Plaintiff grouped together similar claim terms based on Defendants' proposed claim constructions. Defendants adopted the same groupings for purposes of their response so the Court will use the  parties' groupings to construe the claims.

**A. Terms for which Defendants' Construction is "Weighted Jig" or Similar**

Defendants propose that the terms below should be construed as "weighted jig" or a similar construction. Plaintiff proposes that the terms should have their plain and ordinary meaning.

| Claim Term | Defendants'<br>Proposed Construction |
| --- | --- |
| **Term 1 ('978 Pat. Claim 1)**<br>"jig" / "jig body" / "jig having a body with a longitudinal axis, an uppermost surface, a rearward surface, and a hook, said hook including a shank and a hook end, said shank being surrounded by and protruding rearwardly from said body and said hook end being spaced rearwardly behind said rearward surface of said body along said longitudinal axis of said body" | "weighted jig" / "body of the weighted jig" / "weighted jig" |
| **Term 2 ('062 Pat. Claim 1)**<br>"body" / "body having a forward portion, a rearward portion, and a longitudinal axis, the forward portion defining a width" | "body of a weighted jig" |

_____

[1] With one exception, the parties have not asked the Court to construe the remaining terms in the Asserted Patents so the jury will be informed that those terms have their plain and ordinary meaning. The exception is that the '062 Patent contains a clerical error in claim 1. The claim term "loop" was written as "loon," and the parties have agreed that the term should be construed as "loop." *See* Doc. No. 22 at 5.

| | |
|---|---|
| **Term 3 ('062 Patent Claim 1)**<br>"(a) a body having a forward portion, a rearward portion, and a longitudinal axis, the forward portion defining a width;<br>• a wire loop fixed within and extending from the forward portion of the body;<br>• a hook attached to and extending rearwardly from the body along the longitudinal axis of the body, the hook having a hook end spaced apart from the rearward portion of the body" | "weighted jig" |
| **Term 4 ('967 Pat. Claim 1)**<br>"jig body" / "a jig body having a second width, a forward portion, and a longitudinal axis, the body secured around and encircling the shank, the first and second widths extending perpendicular to the longitudinal axis of the jig body and the second width being greater than the first width; a curved wire extending from the forward portion of the body" | "weighted jig" |
| **Term 5 ('967 Pat. Claim 10)**<br>"body" / "body having a forward end and a longitudinal center axis, the body further comprising a curved wire extending from the forward end and a hook extending rearwardly from the body along the longitudinal center axis, the hook having a shank, the body fixedly secured around and encircling the shank along the longitudinal center axis of the body" | "weighted jig" |
| **Term 6 ('967 Pat. Claim 19)**<br>"jig body" | "body of a weighted jig" |
| **Term 7 ('967 Pat. Claim 19)**<br>"a jig body; a hook, the hook having a shank with a first width and the jig body having a second width, a forward end, and a longitudinal axis wherein the first and second widths are perpendicular to the longitudinal axis and the second width is greater than the first width, wherein the jig body is immovably secured to and encircling the shank of the hook; a curved wire extending from the forward end of the body" | "weighted jig" |

Defendants' proposed constructions for the above terms reflect their position that these terms should not be read to encompasses any type of "non-weighted" jig fishing lure. In turn, Plaintiff argues that it would be improper to limit the claims to only a weighted-jig embodiment because that limitation would be inconsistent with the plain and ordinary meaning of a "jig," which need not be "weighted." *See Akamai Techs., Inc. v. Limelight Networks, Inc.,* 805 F.3d 1368, 1376 (Fed. Cir. 2015) (holding "even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim

9

scope using words or expressions of manifest exclusion or restriction") (internal citations and quotations omitted).

Claim terms must be given their plain and ordinary meaning unless one of two exceptions applies: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). With respect to the first exception, in order to be its own lexicographer, the "patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." [2] *Id.* (*quoting CCS Fitness, Inc. v. Brunswick Corp.*¸ 288 F.3d 1359, 1366 (Fed. Cir. 2002)) (internal quotations omitted). With respect to the second exception, "[a]bsent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) (emphasis added). The Court agrees with Plaintiff that the plain and ordinary meaning of the term "jig" does not encompass only a "weighted" embodiment (the parties do not dispute that not all jigs are "weighted") and should be given its full meaning absent a disavowal. However, the Court finds that Plaintiff has in fact disavowed the full scope of the claim term in the specification of the Asserted Patents and must be held to that limitation in construing these claims.

The standards for finding disavowal are "exacting." *GE Lighting Sols., LLC v. AgiLight, Inc*., 750 F.3d 1304, 1309 (Fed. Cir. 2014). Disavowal requires that "the specification [or prosecution history] make[ ] clear that the invention does not include a particular feature." *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1341 (Fed. Cir. 2001).

---

[2] There is no contention by either party that Plaintiff acted as its own lexicographer with respect to these terms so the Court need not discuss that exception to the use of "plain and ordinary meaning."

Accordingly, while such disavowal need not be explicit, it must be clear and unmistakable. *See Trs. of Columbia Univ. v. Symantec Corp*., 811 F.3d 1359, 1362–64 (Fed. Cir. 2016).

It is settled law that claims may be limited by how the specification describes the invention. *See, e.g., UltimatePointer, L.L.C. v. Nintendo Co*., 816 F.3d 816, 823–24 (Fed. Cir. 2016); *Retractable Techs., Inc. v. Becton, Dickinson & Co*., 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("[W]hile the claims leave open the possibility that the recited 'body' may encompass a syringe body composed of more than one piece, the specifications tell us otherwise."). As noted above, courts have found disavowal or disclaimer in the specification based on clear and unmistakable statements by the patentee that limit the claims, such as "the present invention includes ..." or "the present invention is ..." or "all embodiments of the present invention are...." *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co*., 814 F.3d 1343, 1353 (Fed. Cir. 2016); *Regents of the Univ. of Minn. v. AGA Med. Corp*., 717 F.3d 929, 936 (Fed. Cir. 2013); *Honeywell Int'l, Inc. v. ITT Indus*., Inc., 452 F.3d 1312, 1316–19 (Fed. Cir. 2006); *SciMed Life Sys., Inc*., 242 F.3d at 1343–44. When a patentee "describes the features of the 'present invention' as a whole," he implicitly alerts the reader that "this description limits the scope of the invention." *Regents of the Univ. of Minn*., 717 F.3d at 936.

Here, the Background of the Invention section of the Asserted Patents begins by stating that, "[t]he *present invention* relates to fishing lures. More particularly, *the invention* is a snag-resistant fishing lure having a blade member uniquely attached to a *weighted jig body* to substantially minimize the risk of losing the lure to an under-water snag and to provide an intense vibrating action as movement through water displaces the blade from side to side." *See* Doc. No. 1-1 at 13 (emphasis added). Then, in the Summary of the Invention section, the Asserted Patents repeatedly refer to a "weighted jig body," "weighted body," "weighted head," and "weighted jig

11

configuration" to describe the invention. *Id*. ("The snag-resistant fishing lure comprises a blade member uniquely attached to a *weighted* jig body …," "the jig itself is a generally conventional jig, comprising a *weighted* body with a fishing hook …," "[the] lure's blade and *weighted* jig configuration prevents the hook from rolling …") (emphasis added).

Accordingly, in the Asserted Patents, the Plaintiff has made "clear and unmistakable statements" that limit the "jig" claims to a "weighted" jig and therefore disavow and disclaim the broader plain and ordinary meaning of "jig." *See Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907–08 (Fed. Cir. 2019); *Honeywell Int'l, Inc. v. ITT Indus., Inc*., 452 F.3d 1312, 1318 (Fed. Cir. 2006) (limiting a claim term based on the specification where "[o]n at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention'," noting that "[t]he public is entitled to take the patentee at his word and the word was that the invention is a fuel filter."). Simply put, "when a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization." *GPNE Corp. v. Apple Inc*., 830 F.3d 1365, 1370 (Fed. Cir. 2016) (citations omitted); *see also Nystrom v. TREX Co*., 424 F.3d 1136, 1145 (Fed. Cir. 2005) (finding the claim term "board" to be limited to wooden boards due to consistent statements in the specification and prosecution history describing the "boards" as made from wood).

Further, the Court notes that although the term "jig" is not described as "weighted" in the remainder of the specifications of the Asserted Patents, including the claims themselves, the Federal Circuit has instructed that because statements in the "summary of the invention" section of a specification tend to describe the invention overall, they may be more likely to have a limiting impact than statements in the section describing preferred embodiments. *See C.R. Bard, Inc. v. U.S. Surgical Corp*., 388 F.3d 858, 864 (Fed. Cir. 2004). Thus, although a statement's location is

not "determinative," other things being equal, certain sections of the specification are more likely to contain statements that support a limiting definition of a claim term than other sections, although what import to give language from the specification must, of course, be determined on a case-by-case basis. [3] In this case, the Court concludes that when Plaintiff described the invention "as a whole" it did so by clearly and repeatedly describing the claimed "jig" as "weighted." Therefore, it will be held to that limitation, and the Court adopts the construction of these claim terms as proposed by the Defendants.

### B. The "Edge" Terms

Each of the disputed "edge" terms below recites that the blade has an "edge" that is "proximate" the jig body (or a similar variation). As with the "jig" terms, Plaintiff's position is that the terms need not be construed beyond their plain and ordinary meaning. Defendants' position on the "edge" terms is that all but one are "indefinite" and, alternatively, the "edge" portion should be construed to mean a "continuous edge that is part of the blade." Also, for those "edge" terms that recite "a mounting hole" (i.e., Terms 3-5 below), Defendants' position is that the "mounting hole" portion should be construed to mean that the mounting hole "is a continuous hole cut out from the blade."

---

[3] Plaintiff argues in its briefs that Defendants' proposed constructions improperly import the limitations of the specifications into the claims, repeatedly giving as an example that a claim term "pasta" should not be limited to a preferred embodiment of "spaghetti" disclosed in the specifications. However, the circumstances here are different than Plaintiff's example. Rather than simply describing a preferred embodiment of "spaghetti" in the specification, Plaintiff clearly described its entire invention as a "spaghetti recipe" and then summarized the contents of its dish as including "spaghetti" multiple times. So, in accordance with long-settled law, Plaintiff's patents are limited to a "spaghetti recipe" even though the claim term "pasta" would otherwise have a broader meaning.

13

| Claim Term | Defendant's Proposed Construction |
|---|---|
| **Term 1 ('978 Pat. Claim 1)** "a blade having an edge proximal said jig body" | Indefinite. Alternatively: "a blade having a continuous edge that is part of the blade located proximal said jig body" |
| **Term 2 ('062 Pat. Claim 1)** "the blade member . . . having a first edge located proximate to the wire loop" | Indefinite. Alternatively: "the blade member . . . having a first continuous edge that is part of the blade member located proximate to the wire loop" |
| **Term 3 ('967 Pat. Claim 1)** "a blade having a first edge located proximate the forward portion of the body and defining therethrough a mounting hole proximate the first edge" | Indefinite. Alternatively: "the blade having a first continuous edge that is part of the blade located proximate the forward portion of the body and defining therethrough a mounting hole proximate the first edge, wherein the mounting hole is a continuous hole cut out from the blade" |
| **Term 4 ('967 Pat. Claim 10):** "the blade having first edge proximate the body and defining therethrough a mounting hole proximate the first edge" | Indefinite. Alternatively: "the blade having first continuous edge that is part of the blade located proximate the body and defining therethrough a mounting hole proximate the first edge, wherein the mounting hole is a continuous hole cut out from the blade" |
| **Term 5 ('967 Pat. Claim 19):** "a blade having a first edge located proximate the body and defining therethrough a mounting hole" | "a blade having a first continuous edge that is part of the blade located proximate the body and defining therethrough a mounting hole, wherein the mounting hole is a continuous hole cut out from the blade separate from the line attachment holes" |
| **Term 6 ('967 Pat. Claim 2):** "the blade is generally polygonal" | Indefinite. Alternatively: "the blade is shaped such that the outer edges of the blade are formed with continuous edges that meet one another to form an angle or a corner" |
| **Term 7 ('967 Pat. Claim 13):** "providing the blade with a polygonal shape" | Indefinite. Alternatively: "providing the blade with a shape in which the outer edges of the blade are formed with continuous edges that meet one another to form an angle or a corner" |

### 1. Indefiniteness

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112 ¶ 2 (2006). *See* 35 U.S.C. § 112. A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 910 (2014). Defendants carry the burden of showing invalidity due to indefiniteness. *See Apple Inc. v. Samsung Electronics Co*., 786 F.3d 983, 1003 (Fed. Cir. 2015). A patent is presumed valid under 35 U.S.C. § 282 and, "consistent with that principle, a [fact finder is] instructed to evaluate ... whether an invalidity defense has been proved by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011).

The Federal Circuit has stated numerous times that a district court's inquiry on indefiniteness is appropriate at the claim construction stage. *See, e.g., Praxair, Inc. v. ATMI, Inc.,* 543 F.3d 1306, 1319 (Fed. Cir. 2008) ("Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction."); *Cordis Corp. v. Boston Scientific Corp.,* 561 F.3d 1319, 1331 (Fed. Cir. 2009) ("Indefiniteness under 35 U.S.C. § 112 ¶ 2 is an issue of claim construction and a question of law."); *Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1379 (Fed. Cir. 1999) ("analysis under § 112, ¶ 2 is inextricably intertwined with claim construction."). The Court also notes that several other post-*Nautilus* district courts have decided the issue of indefiniteness at claim construction. *See, e.g., California Inst. of Tech. v. Hughes Commc'ns Inc.,* 2014 WL 3866129 (C.D. Cal. Aug. 6, 2014); *Prolifiq Software Inc. v. Veeva Sys.*

15

*Inc.,* 2014 WL 3870016 (N.D. Cal. Aug. 6, 2014); *Thomas Swan & Co. v. Finisar Corp.,* 2014 WL 2885296 (E.D. Tex. June 25, 2014).

In *Nautilus*, the Supreme Court observed that § 112, ¶ 2 requires "a delicate balance." *Nautilus*, 572 U.S. at 909 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002)). On one hand, the court noted, the definiteness requirement must consider the inherent limitations of language. "Some modicum of uncertainty," the court recognized, is the "'price of ensuring the appropriate incentives for innovation.'" *Id*. (quoting *Festo Corp*., 535 U.S. at 741). On the other hand, the court explained that a patent must be precise enough to afford clear notice of what is claimed, thereby "appris[ing] the public of what is still open to them. Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id*. at 909-910 (internal quotation marks and citations omitted). The court further explained another policy rationale: "absent a meaningful definiteness check ... patent applicants face powerful incentives to inject ambiguity into their claims." *Id*.

Balancing these competing interests, the Supreme Court held that "[t]o determine the proper office of the definiteness command, ... we read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Id*. The standard adopted by the Supreme Court "mandates clarity, while recognizing that absolute precision is unattainable." *Id*. It also accords with opinions of the Supreme Court stating that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id*. (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916)).

Defendants argue the specification does not provide the required "reasonable certainty" for the disputed "edge" terms because they do not specify how close to or far from the jig body the

16

edge must be or the distance from the edge of the blade to the mounting hole (which is also relevant to the "eyelet" terms discussed below). Thus, they contend that a POSITA would not know whether or not a lure configuration would meet the claims because while the specification explains the benefits of having the blade attached to the jig body, it does not address the details of the proximate relationship between the edge, the eyelet, and the jig body.[4] In response, Plaintiffs rely on the detailed description of the challenged terms in the specification and assert that a POSITA would be well aware of how to configure the lure to work within the scope of the patents.

The Court agrees with Plaintiff that Defendants have not established by clear and convincing evidence that these claim terms are so indefinite that a POSITA could not be reasonably certain of the bounds of the invention. Here, the key issue is whether a POSITA would understand the meaning of the term "proximate" as it relates to the relationship of the various elements of the invention. Terms of degree often pose definiteness concerns because they are inherently vague and, while these terms have common meaning, they arguably require a more technical meaning within the context of the patent. However, "[t]here is no blanket prohibition on terms of degree." *See Interval Licensing LLC v. AOL, Inc.,* 766 F.3d 1364, 1374 (Fed. Cir. 2014); *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) ("We do not understand the Supreme Court to have implied in [*Nautilus*], and we do not hold today, that terms of degree are inherently indefinite"). "Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Id*. (quotations omitted). In addition, "[t]he degree of precision necessary for adequate claims is a function of the nature of the subject matter." *Id*. at 1382.

---

[4] Defendants make a similar argument with respect to the "slightly larger" claim term discussed below, saying that the size of the "mounting holes" may at some point be too large to be covered by the claims so the patents are required to describe their size with specificity.

Defendants have offered no evidence (at least at this stage of the proceedings) that a POSITA designing a fishing lure would not know or be able to determine based on experience or training an acceptable range of "proximity" to allow the lure to function as described in the patents. Indeed, it appears that the precise distance between the elements of the lure will depend to a significant degree on the relative size of the holes, blade, jig, etc. of a particular lure (which is not specifically claimed in the patent). Further, a blade is a standard component of a fishing lure. Therefore, the scope of these claim terms would be reasonably clear to a POSITA, who would in all circumstances need to have the skill to arrange the basic dimensions of the standard elements of a lure to work together. *See S3 Inc. v. NVIDIA Corp.*, 259 F.3d 1364, 1371 (Fed. Cir. 2001) (reversing a district court's ruling of invalidity for indefiniteness because a POSITA would understand the structure of a "selector" from the name alone). In sum, the Court finds that a POSITA will be able to reasonably ascertain[5] the required distances sufficiently to practice the invention in accordance with the patent specification.

### 2. Defendants' Proposed Claim Constructions

Having found that Defendants have failed to prove that the claims are indefinite, the Court also rejects their proposed "rewording" of these disputed claim terms. Indeed, Defendants acknowledge that the constructions they propose for the "edge" portion, the "mounting hole" portion, and the "polygonal" portion of the "edge" terms are "consistent" with the plain and ordinary meaning of the terms. *See* Doc. No. 26 at 22-24. This admission is sufficient for the Court to accept Plaintiff's proposed "plain and ordinary meaning" construction.

---

[5] A POSITA will also have guidance from the relevant patent drawings which provide an illustration of the "proximate" relationship of the lure's elements.

18

Plaintiff is entitled to choose its claim terms and have those terms given their plain and ordinary meaning without Defendants' redefinition or "spin," even if that alternate construction is "consistent" with the accepted meaning of the terms.[6] "In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1201–02 (Fed. Cir. 2002); *see Armor Screen Corp. v. Storm Catcher, Inc.,* No. 07-81091-CIV, 2009 WL 899946, at *24 (S.D. Fla. Mar. 10, 2009), *report and recommendation adopted*, No. 07-81091-CIV, 2009 WL 10667862 (S.D. Fla. Apr. 2, 2009) (declining to adopt Defendants' construction, which, in part, proposes to construe the portion of the term "a plurality of . . . fasteners" as "a number of fasteners" and, in so holding, explicitly declining to "rewrite the claim language"). Plaintiff's choice of words in defining its invention as to the "edge" terms will therefore be honored and given their plain and ordinary meaning.

**C. The Striking" Terms**

Each of the asserted claims below recites "strikes" and/or "striking." For these terms, Defendants propose that (1) actual contact must occur, and (2) it is the "edge" of the blade that

---

[6] Moreover, the patents' specifications and claims do not support Defendants' proposed narrow definitions of the disputed terms. For example, the specification and the claims are silent as to whether or not the blade edges are "continuous" and whether the mounting hole is "continuous." Had the Plaintiff intended to claim a continuous, uninterrupted edge, it would have claimed "a continuous edge" or "an uninterrupted edge." Defendants are not permitted to narrow the meaning of the claim terms by trying to limit the claims to a single embodiment. *See Akamai Techs., Inc.,* 805 F.3d at 1376.

does the striking. Again, Plaintiff urges the Court that no construction is necessary beyond holding that the terms should be given their "plain and ordinary" meaning.

| Claim Term | Defendant's Proposed Construction |
|---|---|
| **Term 1 ('967 Pat. Claim 1)**<br>"the movement of the blade being limited by the first edge striking one of at the body or at another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole" | The "striking" portion of this term should be construed to require actual contact between the first edge (as construed above) of the blade and either (1) the body, or (2) another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole. |
| **Term 2 ('967 Patent Claim 10)**<br>"the movement being limited by the first edge striking one of at the body or at another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole" | The "striking" portion of this term should be construed to require actual contact between the first edge (as construed above) and either (1) the body, or (2) another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole. |
| **Term 3 ('967 Pat. Claim 19)**<br>"the movement of the blade being limited by the first edge striking one of at the body or at another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole" | The "striking" portion of this term should be construed to require actual contact between the first edge (as construed above) and either (1) the body, or (2) the another portion of the curved wire opposite the portion of the curved wire positioned through the mounting hole. |
| **Term 4 ('062 Pat. Claim 1)**<br>"the side-to-side motion being defined either by the first edge of the blade member striking a first side of the body and striking a second side of the body opposite the first side or by the first edge of the blade member striking another portion of the wire loon that is opposite the portion of the wire loop positioned through the mounting hole" | The "striking" portion of this term should be construed to require actual contact between the first edge (as construed above) of the blade member and either (1) both the first side of the body and the second side of the body opposite the first side, or (2) another portion of the wire loop that is opposite the portion of the wire loop positioned through the mounting hole. |
| **Term 5 ('062 Pat. Claim 5)**<br>"the side-to-side motion is defined by the first edge of the blade member striking the another portion of the wire loop" | The "striking" portion of this term should be construed to require actual contact between the first edge (as construed above) of the blade member and the another portion of the wire loop. |
| **Term 6 ('978 Pat. Claim 1)**<br>"said edge strikes said jig body" / "the striking of said edge upon said jig body limiting the oscillation in one direction" | The "strikes" and "striking" portion of these terms should be construed to require actual contact between the edge (as construed above) and the jig body. |

As with the "edge" terms discussed above, Defendants' argument that their proposed constructions mirror the plain and ordinary meaning of the disputed "striking" claim terms leaves the Court questioning why any further construction of the terms is necessary or proper. In their Responsive Claim Construction Brief, Doc. No. 26, Defendants write that their proposed construction requiring "actual contact" "is simply the plain and ordinary meaning of "strike," "Defendants' proposed constructions do not … change the meaning of the terms," and "Defendants have no objection to leaving the claim language as written." *See* Doc. No. 26 at 16. Thus, it appears there is no dispute as to the *meaning* of the "disputed" claim terms but instead Defendants' argument is proffered to anticipate and resolve through claim construction a future disagreement over the *application* of those terms to particular circumstances.

Again, the Court's task in the claim construction process is only to determine the meaning and scope of the patent claims based first on the words of the claims and then, where the ordinary meaning of a claim phrase or term is not apparent, act as would a person of ordinary skill in the art to construe what the claims mean based on the hierarchy of evidence discussed above. *See Innova/Pure Water*, 381 F.3d at 1116. In other words, if the meaning of the claim language is clear then the Court need not and should not undertake to "construe" how a POSITA would understand the meaning of the claims. Moreover, later proceedings – not claim construction – will determine the application of the claim terms to Defendants' allegedly infringing products and the merits of other defenses Defendants may raise to the Asserted Patents. Therefore, the Court finds that further construction of the "striking" terms beyond their plain and ordinary meaning is unnecessary, and the Court will adopt Plaintiff's proposed construction of those claim terms.

## D. The "Eyelet" Terms

The parties refer to the next set of disputed claims as the "eyelet" terms as they relate to the eyelet of the jig body, which is also referred to as the "mechanism for joining said jig body and said blade together" in the '978 Patent, "wire loop" in the '062 Patent, and "curved wire" in the '967 Patent.

| Claim Term | Defendant's Proposed Construction |
|---|---|
| **Term 1 ('978 Pat. Claim 1)**<br>"said mechanism . . . extending from said jig body and through said blade along said edge" | Indefinite.<br><br>Alternatively: "said mechanism . . . extending from said jig body and through said blade along said edge such that said mechanism is completely surrounded by the blade" |
| **Term 2 ('062 Pat. Claim 1)**<br>"the blade member . . . defining therethrough a mounting hole in proximity to the first edge, through which mounting hole a portion of the wire loop is positioned" | Indefinite.<br><br>Alternatively: "the blade member . . . defining therethrough a mounting hole in proximity to the first edge, through which mounting hole a portion of the wire loop is positioned such that the wire loop is completely surrounded by the blade member, wherein the mounting hole is a continuous hole cut out from the blade member separate from the line attachment holes" |
| **Term 3 ('967 Pat. Claim 1)**<br>"the positioning of a portion of the curved wire through the mounting hole attaching the blade to the body" | "the positioning of a portion of the curved wire through the mounting hole attaching the blade to the body such that the portion of the curved wire is completely surrounded by the blade" |
| **Term 4 ('967 Pat. Claim 10)**<br>"positioning a portion of the curved wire through the mounting hole to attach the blade to the body" | "positioning a portion of the curved wire through the mounting hole to attach the blade to the body such that the portion of the curved wire is completely surrounded by the blade" |
| **Term 5 ('967 Pat. Claim 18)**<br>"the curved wire defines a cross-sectional diameter and wherein the method further comprises providing the mounting hole in the blade slightly larger than the cross-sectional diameter of the curved wire" | Indefinite.<br><br>Alternatively: "the curved wire defines a cross-sectional diameter and wherein the method further comprises providing the mounting hole in the blade slightly larger than the cross-sectional diameter of the curved wire, such that any gap between the outer edge of the curved wire and the inner edge of the mounting hole is no greater than the cross-sectional diameter of the curved wire" |

22

| Term 6 ('967 Pat. Claim 19) | "a portion of the curved wire being positioned through |
|---|---|
| "a portion of the curved wire being positioned through the mounting hole" | the mounting hole, wherein the portion of the curved wire is completely surrounded by the blade" |

Defendants challenge Plaintiff's proposal that the Court construe these claims according to their plain and ordinary meaning on two grounds. First, they allege several of the claims are "indefinite" and, second, they ask the Court to construe the claim language defining the eyelet as going "through" the blade or the mounting hole as requiring that the "mechanism," "wire loop" or "portion of curved wire" be "completely surrounded by the blade."

The Court has already discussed the governing law on indefiniteness in detail above. For the reasons discussed with respect to the "proximity" language in the "edge" terms, the Court finds that claim terms 1 and 2 in this section not indefinite, and a POSITA would be informed with reasonable certainty with respect to the scope of these claims. The Court reaches the same conclusion as to term 5. As with "proximity," the context of the claims and the nature of the invention would, together with the specification and drawings, inform a POSITA of the scope of the term "slightly larger" such that it is not indefinite.

The Court also finds that Defendants have not established that the claim terms "through" or "slightly larger" need further construction or "clarification." Defendants do not explain how these terms are ambiguous or why they are in need of clarification. These patent terms have common, accepted meanings and are the claim terms chosen by the patentee and accepted by the PTO. Again, Defendants appear to be attempting to use the claim construction process not to construe claims having a truly uncertain meaning but rather to gain an advantage in challenging the Plaintiff's infringement allegations down the road. Accordingly, the Court declines Defendants' invitation that it veer off the limited task of claim construction and will construe these claims as having their plain and ordinary meaning as requested by Plaintiff.

E.    **"Miscellaneous" Term**

The final claim term disputed among the parties is "the blade member resides in plural planes" ('062 Pat. Claim 10). In the parties' Joint Claim Construction and Prehearing Statement, Defendants asserted that this claim term is indefinite and, alternatively, proposed that this term be construed as "the blade member is bent at the end opposite the first edge." Doc. No. 22 at 16. Plaintiffs ask the Court to construe the claim term as having its plain and ordinary meaning. Defendants present little argument on this claim and no argument at all on their assertion that the claim is indefinite. In the absence of any proof of indefiniteness, which must be proven by clear and convincing evidence, the Court finds that Defendant has failed to meet its burden on this issue.

Defendants' proposed alternate construction must also be rejected. "Plural" has a clearly understood meaning of "more than one," and Defendants' proposed construction, while perhaps consistent with the reference to this claim term in the specification of the '062 Patent, Doc. No. 1-2 at 14, 4:26-41, would improperly limit the blade to occupying only two planes. In the absence of a clear disavowal of the broader claim scope reflected in the language of the claim, which is not argued by Defendants nor does the Court find, the Court will not narrow the meaning of the issued claim term to the limits of a single embodiment.  *See SciMed Life Sys., Inc.*, 242 F.3d at 340. Therefore, the Court will construe this term to have its plain and ordinary meaning.


**SO ORDERED ADJUDGED AND DECREED**.

Signed:   December   10, 2020

Kenneth D. Bell
United States District Judge

24